## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

CHERYL UNGEMACH,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

1:18-cv-04987-NLH

**OPINION**

---

**APPEARANCES:**

RICHARD LOWELL FRANKEL
KELLY OHLERT
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

ROBERT S. DRUM
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3] 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, June 1, 2013. For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On June 21, 2013, Plaintiff, Cheryl Ungemach,

---

of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI. See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945). The Court will provide citations only to the DIB regulations. See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

protectively filed an application for SSI and DIB,[4] alleging

that she became disabled as of June 1, 2013.[5]  Plaintiff claims

that she can no longer work at her previous job as a lunchroom

aide because she suffers from numerous impairments, including

fibromyalgia, degenerative disc disease, migraines, and

irritable bowel syndrome ("IBS").[6]

    After Plaintiff's initial claim was denied on September

3, 2013, and upon reconsideration on January 16, 2014,

Plaintiff requested a hearing before an ALJ, which was held on

---

[4] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to
file for benefits.  That date may be earlier than the date of
the formal application and may provide additional benefits to
the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of
disability is June 1, 2013, the relevant period for
Plaintiff's SSI claim begins with her June 21, 2013
application date, through the date of the ALJ's decision on
July 27, 2016.  See 20 C.F.R. § 416.202 (claimant is not
eligible for SSI until, among other factors, the date on which
she files an application for SSI benefits); 20 C.F.R. §
416.501 (claimant may not be paid for SSI for any time period
that predates the first month she satisfies the eligibility
requirements, which cannot predate the date on which an
application was filed).  This difference between eligibility
for SSI and DIB is not material to the Court's analysis of
Plaintiff's appeal.

[6] Plaintiff was 47 years old at the time of the alleged
disability onset date, which is defined as a younger
individual (age 18-49).  During the claim process, Plaintiff
changed age category to closely approaching advanced age (age
50-54).  20 C.F.R. §§ 404.1563, 416.963.

March 4, 2016.  On July 27, 2016, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on January 14, 2018, making the ALJ's July 27, 2016 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry

4

is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.

5

1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, <u>Fargnoli</u>, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams</u>, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir.

6

1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB and SSI**[7]

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be
expected to result in death, or which has lasted or can be
expected to last for a continuous period of not less than 12
months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this
definition, a Plaintiff qualifies as disabled only if his
physical or mental impairments are of such severity that he is
not only unable to perform his past relevant work, but cannot,
given his age, education, and work experience, engage in any
other type of substantial gainful work which exists in the

---

[7] The standard for determining whether a claimant is disabled
is the same for both DIB and SSI.  <u>See</u> <u>Rutherford v. Barnhart</u>,
399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted).
DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599.
Parallel SSI regulations are found at 20 C.F.R. §§ 416.900-
416.999, which correspond to the last two digits of the DIB
cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. §
416.945).  The Court will provide citations only to the DIB
regulations.  <u>See</u> <u>Carmon v. Barnhart</u>, 81 F. App'x 410, 411 n.1
(3d Cir. 2003) (because the law and regulations governing the
determination of disability are the same for both DIB and SSI
the Court provided citations to only one set of regulations).

national economy, regardless of whether such work exists in

the immediate area in which he lives, or whether a specific

job vacancy exists for him, or whether he would be hired if he

applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis

added).

The Commissioner has promulgated regulations[8] for

determining disability that require application of a five-step

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-

step process is summarized as follows:

1. If the claimant currently is engaged in substantial
   gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe
   impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed
   impairment in 20 C.F.R. Part 404, Subpart P,
   Appendix 1 and has lasted or is expected to last for
   a continuous period of at least twelve months, the
   claimant will be found "disabled."

4. If the claimant can still perform work he has done
   in the past ("past relevant work") despite the
   severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the
   claimant's ability to perform work ("residual
   functional capacity"), age, education, and past work
   experience to determine whether or not he is capable
   of performing other work which exists in the

---

[8] The regulations were amended various provisions effective
March 27, 2017.  See 82 F.R. 5844.  Because the ALJ issued her
decision prior to that effective date, the Court must employ
the standards in effect at the time of her decision.

national economy.  If he is incapable, he will be
found "disabled."  If he is capable, he will be
found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of

proof.  See Wallace v. Secretary of Health & Human Servs., 722

F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of

the analysis, the burden is on the claimant to prove every

element of his claim by a preponderance of the evidence.  See

id.  In the final step, the Commissioner bears the burden of

proving that work is available for the Plaintiff: "Once a

claimant has proved that he is unable to perform his former

job, the burden shifts to the Commissioner to prove that there

is some other kind of substantial gainful employment he is

able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir.

1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir.

1983).

### C.  Analysis

At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since the alleged onset of

disability.  At step two, the ALJ found that Plaintiff's

impairments of fibromyalgia and back disorders were severe.

At step three, the ALJ determined that neither Plaintiff's

severe impairments nor her severe impairments in combination

with her other impairments equaled the severity of one of the

listed impairments.  The ALJ then determined that even though

Plaintiff did not have any past relevant work experience,[9]

Plaintiff's residual functional capacity ("RFC") enabled her

to perform light work with certain restrictions.[10]  The ALJ

consulted a vocational expert ("VE"), who testified that a

person with Plaintiff's RFC could perform jobs which exist in

significant numbers in the national economy such as a

_____

[9] The ALJ did not consider Plaintiff's part-time, two-hour-a-
day job as a lunch room aide to be past relevant work.  (R. at
36.)

[10] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light,
medium, heavy, and very heavy."); 20 C.F.R. § 404.1567 ("Light
work. Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up
to 10 pounds. Even though the weight lifted may be very
little, a job is in this category when it requires a good deal
of walking or standing, or when it involves sitting most of
the time with some pushing and pulling of arm or leg controls.
To be considered capable of performing a full or wide range of
light work, you must have the ability to do substantially all
of these activities. If someone can do light work, we
determine that he or she can also do sedentary work, unless
there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time. . .
.").

teacher's aide, office clerk, mail clerk/sorter, and electrical assembler (steps four and five).

Plaintiff argues that the ALJ erred in several ways. Plaintiff argues the ALJ: (1) did not properly consider the medical evidence; (2) did not consider Plaintiff's IBS or migraines in combination with her severe disorders in formulating Plaintiff's RFC; (3) failed to perform a function-by-function analysis; (4) failed to follow HALLEX § I-2-7-30(H), Proffer Procedures;[11] and (5) erroneously applied SSR 96-7p even though that rule was superseded by SSR 16-3p.

The Court quickly rejects Plaintiff's third, fourth, and fifth bases for appeal because they are not independent grounds for reversal, and the Court does not find that these issues impact, even tangentially, Plaintiff's other two bases for appeal. See Salles v. Commissioner of Social Sec., 229 F. App'x 140, 149, 2007 WL 1827129, at *7 (3d Cir. 2007) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004); SSR 96-

---

[11] HALLEX stands for the SSA's "Hearings, Appeals and Litigation Law Manual." It is intended to convey "guiding principles, procedural guidance and information to the Office of Hearings and Appeals ("OHA") staff.... It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council, and Civil Action levels." HALLEX § I-1-0-1, Purpose, https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html.

8p) (explaining that the SSA has stated that the RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis, and therefore any alleged error in an ALJ's omission to perform a "function by function" analysis is actually a challenge to his RFC assessment as a whole); Bordes v. Commissioner of Social Sec., 235 F. App'x 853, 859, 2007 WL 1454289, at *4 (3d Cir. 2007) (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981)) ("HALLEX provisions . . . lack the force of law and create no judicially-enforceable rights."); Sasse v. Commissioner of Social Security, 2019 WL 1233553, at *7 (D.N.J. 2019) (explaining that effective March 26, 2016, the SSA issued Social Security Ruling 16-3p, which superseded SSR 96-7p, to eliminate the use of the term "credibility," but even though SSR 16-3p clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same).

Although requiring slightly more analysis, the Court also

finds Plaintiff's other two bases for appeal to be unavailing.

When considering a claimant's disability benefits claim, an

ALJ's duty is to review all the pertinent medical and

nonmedical evidence and explain his conciliations and

rejections.  20 C.F.R. § 404.1529; Burnett v. Comm'r of Soc.

Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); Cotter v.

Harris, 642 F.2d 700, 707 (3d Cir. 1981).  A treating

physician's opinions are typically entitled to "great weight,"

but an ALJ may reduce his reliance upon a treating physician's

opinions if those opinions are inconsistent with other medical

evidence, and if he explains his reasoning.  Plummer v. Apfel,

186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to

accept or reject all or part of any medical source's opinion,

as long as the ALJ supports his assessment with substantial

evidence."); Cotter, 642 F.2d at 705 ("We are also cognizant

that when the medical testimony or conclusions are

conflicting, the ALJ is not only entitled but required to

choose between them. . . . [W]e need from the ALJ not only an

expression of the evidence s/he considered which supports the

result, but also some indication of the evidence which was

rejected."); Chandler v. Commissioner of Social Sec., 667 F.3d

356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1),

404.1546(c); 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-6p) (other quotations, citations, and alterations omitted) ("The ALJ - not treating or examining physicians or State agency consultants - must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, the law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity, and state agent opinions merit significant consideration as well.").

Plaintiff argues that the ALJ improperly discounted certain medical evidence without properly explaining her reasoning. To the contrary, the Court finds that the ALJ satisfied her obligation in this regard.

The ALJ observed:

(1) The opinion of Plaintiff's treating rheumatologist, Dr. Moynihan, was based mainly on Plaintiff's allegations, and Dr. Moynihan's progress notes concern the need for further testing and treatment, which Plaintiff has refused (R. at 34);

(2) Plaintiff's primary care physician, Dr. Wu, provided limited treatment for Plaintiff's back pain and fibromyalgia, with most of his treatment consisting of routine issues, such

a fever and irritable bowel (R. at 34);

(3) Two consultative examiners' opinions that found
Plaintiff to be capable of sedentary work, but that was not
supported by the record (R. at 34), which included:

- Plaintiff lives alone on the top floor of a duplex
  requiring her to use stairs (R. at 32);

- Plaintiff drives 10-15 minutes without experiencing
  pain (R. at 33);

- Even though her mother helps Plaintiff with laundry
  and her parents do most of her shopping, Plaintiff
  does her own cleaning, she can attend to her
  personal care, she makes simple meals, and cares for
  her cat (R. at 33);

- Plaintiff attends church services that last about an
  hour (R. at 33);

- In November 2013, Plaintiff saw Susan Lotkowski,
  D.O., who noted that the claimant's gait was wide-
  based and she drags both of her feet when walking
  poor[ly].  However, Dr. Lotkowski also noted poor
  effort throughout the examination.  She found that
  the claimant's degenerative disc disease does not
  appear to be causing significant nerve root

compression and does not result in focal neurological deficits localizing to the lumbar spine. Further, there was no evidence of significant neuropathy or polyneuropathy on examination. Dr. Lotkowski recommended neck and back exercises and further testing (R. at 33);

- In April 2016, consultative examiner Dr. Cornejo found: Upon examination, she was able to get on and off the examination table; go from lying down to sitting up; dress herself and was comfortable in the seated position during the interview. There was no swelling or evidence of joint deformity of the upper extremities. Although Dr. Cornejo noted decreased range of motion of the shoulders, he questioned the claimant's effort. Further, he noted tenderness in the elbows, ulna and fingers with minimally decreased muscle strength of the biceps and triceps. Additionally, an examination of the lower extremities failed to reveal evidence of joint deformity, instability or swelling. Her knees and ankles showed normal range of motion and no sensory deficit to light touch or pinprick. An examination

of the cervical and lumbar spines revealed decreased range of motion with tenderness. Despite this, she was able to walk with a normal physiologic gait without a limp and did not require the use of an ambulation aid. (R. at 35);

(4) Plaintiff does not take any medication other than aspirin and natural supplements (R. at 32);

(5) Plaintiff has rejected her doctors' prescribed treatments, refusing to take medication, and she claims she cannot swim due to a chlorine allergy, and she has no money for physical therapy (R. at 33);

(6) Plaintiff as "bad days" once a month (R. at 32);

(7) The record shows that the treatment the claimant has received has been routine and conservative, consisting mainly of routine follow-ups with her rheumatologist and unremarkable testing. She has undergone limited treatment due to her fear of potential side effects. In order to [qualify for] benefits, the claimant must follow treatment prescribed by her physicians if this treatment can restore her ability to work. If the claimant does not follow the prescribed treatment without a good reason, the undersigned will find them not disabled (20 CPR 404.1530 and 416.930) (R. at 35).

Plaintiff disagrees with the ALJ's assessment of the above outlined evidence, but it cannot be found that the ALJ failed to comply with <u>Plummer</u> and <u>Cotter</u> and provide a sufficient expression of the evidence she considered, and how she viewed it in formulating Plaintiff's RFC.

The ALJ also did not err in her consideration of Plaintiff's migraines.  It is true that an ALJ must consider all of a claimant's impairments when assessing her RFC, but the non-severe impairments must be established by credible evidence and have demonstrable impact on a claimant's RFC. <u>See</u> 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); <u>Page v. Barnhart</u>, 108 F. App'x 735, 738 (3d Cir. 2004) ("An impairment is not severe if medical evidence establishes that the condition has no more than a minimal impact on the individual's ability to engage in basic work activities.").

The ALJ noted that one of Plaintiff's claimed impairments was migraine headaches, and that she experienced migraine headaches triggered by noise at work.  (R. 32.)  Plaintiff

argues that the ALJ's failure to mention her migraines in the
remainder of the decision was erroneous and requires remand.
To support her argument, Plaintiff provides a string cite to
the record without providing any detail as to the contents of
those citations.  The Court has viewed the record citations,
and finds that none of them supports her argument.

> R. at 214: Disability Report – Adult – Form SSA-336,
> which is a form Plaintiff completed herself as part of
> the application process, on which she lists migraines as
> one of her conditions.

> R. at 280: Letter from Plaintiff's counsel to the ALJ
> after the hearing before the ALJ regarding the proffer of
> Dr. Cornejo, in which counsel argues that Dr. Cornejo did
> not address Plaintiff's migraines.

> R. at 317: Initial visit summary with Dr. Moynihan on
> October 25, 2012, where Plaintiff reported her history,
> including that she experiences migraines.

> R. at 352:  Medical source form completed by Dr. Moynihan
> on October 24, 2013 where it lists Plaintiff's
> impairments based on what Plaintiff reported during the
> October 25, 2012 office visit.

> R. at 361: Treatment record from Plaintiff's November 15,
> 2013 office visit with Dr. Lotkowski, where Plaintiff
> reported that she experienced migraines.

> R. at 368: Office visit note with Dr. Wu on February 27,
> 2015 for pain in lower abdomen, which lists migraines as
> one of her conditions, but this treatment note is
> unrelated to migraines.

> R. at 385: Office visit with Dr. Wu on December 29, 2015
> for fever and sore throat, which lists migraines as one
> of her conditions, but this treatment note is unrelated
> to migraines.

R. at 390: Duplicate of R. at 385.

Other than Plaintiff's self-reporting that she experiences migraines, which her physicians have recorded in their records, Plaintiff does not cite to one medical record that reveals any office visit specific to her migraines, or documents how her migraine headaches impact her functioning. The ALJ cannot be faulted for not considering Plaintiff's migraine headaches in the RFC assessment because the only record of Plaintiff's migraines is Plaintiff's conclusory statement that she experiences them. See Hatton v. Commissioner of Social Security Admin., 131 F. App'x 877, 879 (3d Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(2)) ("[A] medical source's recitation of subjective complaints is not entitled to any weight."); Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996) (holding that a medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report)).[12]

---

[12] Plaintiff makes the same argument regarding Plaintiff's IBS/gastritis and severe fatigue. For Plaintiff's IBS/gastritis, Plaintiff does not cite to any record evidence not considered by the ALJ. For Plaintiff's severe fatigue, Plaintiff cites to four medical records which are the same type as those documenting her migraine headaches – i.e., Plaintiff's self-reporting that she feels fatigued. (R. at 371-80, 385, 390, 401.) For the same reasons the Court

**III. CONCLUSION**

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ).  The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of June 1, 2013 is supported by substantial evidence.  The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date:  July 11, 2019                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

_____

rejects Plaintiff's argument regarding the ALJ's failure to consider her migraines, the Court rejects Plaintiff's argument regarding her IBS/gastritis and severe fatigue.

21